The first case of the document this morning is 2-24-0153. Anthony P. Sharrone, Bill Dickerson, and Joseph Rivera claim to be his appellants. They are from the Village of Island Lake, Illinois. Charles Ambridge, William Shryock, and Mark Beeson claim to be his appellants. On behalf of the appellants, Mr. Richard D. Grosso. On behalf of the appellees, Mr. Matthew A. Perl. All right, good morning, gentlemen. We will begin with Mr. Rosten. Good morning, Your Honors, and I want to begin by thanking the Court. I'm very appreciative of the fact that the Court accommodated me. I was able to seek permission and get a surrogate to go for me into the other case, and I sincerely appreciate it. I hope I did not seriously inconvenience or at all inconvenience the Court and reroute its schedule. In any event, we're here now. Well, we're glad to see you here this morning. I don't often get the privilege, so I wanted to appear in person. Your Honor, we're here this morning because I represent three people who were former policemen in the Village of Island Lake. Mr. Chironi was the Chief of Police. He'd been the Chief of Police for four years before his dismissal. Mr. Dickerson had been there ten years. And actually, Mr. Chironi had a previous stint. He was the Chief of Police. So they had been there a combined 20 years. Mr. Rivera's in a little different position. He'd been there only a year before his dismissal. But the reason we're here is because, as I say, they were former employees. And the question before the Court now is, why are they former employees? And we would argue that they were former employees because they were illegally, we would say, fired. Mr. Rivera, I know, has resigned, but under circumstances which we believe, which indicate that he had experienced severe retaliation. So each of the people who were fired were fired for different legal reasons. The trial court had three different, that is, issues of law, as opposed to necessarily fact. Why it granted the motion for summary judgment. And so there's three different analyses pertaining to each of the separate individuals. In the case of Mr. Chironi, the Court determined that they were, Mr. Chironi had been lawfully fired because the act which created the firing was a legislative act. And therefore, the village and the board members were entitled to legislative immunity. Let me ask a question as long as you brought that particular point up. As we look at this disposition, are we looking at the village and then those, is it three, yes, the three other defendants? Do we look at them the same way? Would maybe the three be covered but the village wouldn't or vice versa? I made the distinction in our argument in the briefs that at least with regard to the village, we believe that the village is not a legislator and so therefore is not entitled to legislative immunity. I recognize and But you concede that the individual defendants are? The individual defendants, no, we would say that there's a tension between, and this is the primary argument that we have regarding Mr. Chironi, is that the tension between the Illinois Whistleblower Act and the Tort Immunity Act, which is a village and its board's legislative immunity, is we think palpable. And we cite the laws that say that where there is such tension, and I'll get to the core of the tension in a minute, but the most recent statute and specific statute would be the applicable one. The Tort Immunity Statute seems to be a general grant of legislative immunity. The Whistleblower Act would seem as a specific, it's directed to a specific set of circumstances where somebody's undergone, they've reported a crime and then been fired. So that would be the specific cause of action that's applicable under the Whistleblower Act, and it's the most recent and specific. So we would hold that it is the one that applies. Now, they could be read together that you can't retaliate, but still apply legislative immunity to protect the legislators. I know you argue that the village doesn't have legislative immunity for an administrative act. I'm going to be. But you're not conceding that. The bottom line is as it relates to the individual defendants, you don't concede that point. That's correct, Your Honor. We say that neither would be protected in this setting because of the Illinois Whistleblower Act. But I will forthrightly admit that all of the cases that I cite regarding what constitutional appropriate exercise of the legislative immunity involve federal cases in which the cause of action in which the court is ruling and from which I draw the various holdings address courts addressing of 1983 actions. But I'm at a loss to know why that makes a difference. That is why if I go to federal court, somebody's got legislative immunity if they do one thing. And in a different court, they don't. And so I'm suggesting that the rules around what constitutes appropriate exercise of legislative authority should be uniform. And, you know, it's worth considering whether those cases holding that where you're direct, where you're directing or targeting the person, that is a discriminatory act. That's not protected by legislative immunity because you're just, that's not the appropriate exercise of legislative authority. But where you're simply saying we're shifting the economic burden here or there and as a result somebody's got to lose their job, that's the appropriate time that you're entitled to legislative immunity because the village has to arrange its affairs so that it can afford to do whatever. And if they need to fire some people, not a specific person because of something, but just they're organizing their government the way they feel they can economically sustain it, that's appropriate. But where you go out after somebody, after they've done something. Now, I say that the, I'd argue that what happened here is that these people were investigating what the goings-on in the village. They determined that some of the, that the mayor and at least one of the board members had done things that were violative. What were the specific facts that supported that, that are articulated in the complaint? You mean what are the facts? The facts of the offenses that your clients were investigating. What were the offenses? They determined that, for instance, one of the people who was the guy running around, a building manager, I guess. I forgot what his actual title was, but he was granted all kinds of authority. He was using the car for his own personal purposes. He would drive it around, and then when he would come back to the village, he'd stick the plate for the municipality on it. They determined that the board member had a house, and the name of the village is Island Lake. They had ordered some, I want to say rubble or stones to protect the beach or something, and the board member had requisitioned the extra that he didn't pay for and used it on his own personal house. There were people who said, in the complaint, I mean, anyway, you're asking, so I'm telling you what they said. One of the people said that the board member, Mr. Beeson, was collecting money at festivals and other official... There's no sworn affidavits, though, correct? Well, we never, I mean, well, in the depositions, we talk about it. I mean, there's all, we never got to a trial, but... That's my question for that second issue being factually was the trial court. According to Ayer, in writing summary judgment, what was in the universe of facts appropriate for summary judgment? Like affidavits, admitted facts, it's in the complaint, it's admitted in the answer. Depositions... We would say that the reason that, we think that there is enough evidence in the case, and by the way, so did the... But I'm asking you specifically what evidence was in the universe of facts before the trial court appropriate for summary judgment. Allegations in the complaint are not. Plaintiffs' testimony at a deposition to things that were alleged in the complaint, that's in the universe of facts. Or if someone were to, as Justice Burkett indicates, swear it out in an affidavit, that's before the trial court on a motion for summary judgment. So in the response to the motion for summary judgment, we point to all kinds of paper evidence that was there. For instance, Mr. Rivera and another officer had authored a letter in which they complained that they were being discriminated against. And they invoked the Illinois Whistleblower Act and said, we're being interfered with in our investigation. And that's a letter that was attached to one of their motions. And I point out that there's discussion. I pointed out in the depositions where it was, there's a lot of discussion about the fact that, well, we were investigating and so forth. In the plaintiff's depositions? Yes, in the plaintiff's depositions taken by counsel. And we think that there's a lot of, not just some evidence, but a compelling case that these people were working there for a long time, at least the two of them. And six months after they determined that they were being investigated, that the village and these board members were being investigated and the mayor, they're no longer working there. I think when you walk into a courtroom and you tell a jury, these people were longstanding employees. They were veterans of the force. Nobody said boot. And now, all of a sudden, six months later, after they determined, one of the things they did was they launched an investigation of the investigators. I think that on its face that that is something which could be considered to be something that looked like they were trumping up evidence. They waited to fire them after they got, or waited to fire Mr. Ciarone, after they got this report that they spent $400 an hour to hire somebody to go dig up all the dirt on Dickerson and Ciarone, which was then used in Mr. Dickerson's case to get him fired. But it was almost immediately after they got the report that Mr. Ciarone was fired. What we say is, about Mr. Ciarone, we believe that the violation of the Illinois Whistleblower Act is in tension with the legislative immunity which the court based its ruling on. Furthermore, Mr. Dickerson, the summary judgment was granted on the basis of res judicata. I've explained in the briefs that there was nothing in the arbitrator's opinion that said, you know, I've considered these facts and I've determined that that is not the reason. And counsel went out of his way to demonstrate over and over again that the 10 things that Mr. Dickerson did that got him fired were all of these contractual ones under the CBA. He was a unionized employee and that's the reason that he was fired. There was no ruling on, at all, on these other facts. And that they say there was one sentence that said that he, that apparently in the brief, in the arbitration, that said that Mr. Dickerson believed that he was fired because he was doing some investigating. But there was a, if you look at the, I think the Beckman case, they said even though the facts surrounding this retaliatory discharge in that case claim were there, there was no ruling on it. How soon, well first of all, how did the village and these three gentlemen find out that they were being investigated? What triggered their knowledge? You know, I honestly don't know the answer to that question. Okay, so then the next question you might not be able to answer either. How long after they gained that knowledge were these actions against these three police officers taken? Well, actually, I'm going to, if I can, just for a minute, I do recall that what happened was that they launched the investigation that at some point they were questioned in the actual executive meeting and the officer said, I can't tell you because we're doing an investigation. That occurred like in May and then I think they were fired like not much later. Okay. And there's even one session where they said, how can we get rid of them? And the village attorney said, well, you can fire them. So, you know, and it's not long after that they were fired. So just a minute, sir. Just a moment. Thank you. We have no other questions. You'll have an opportunity for rebuttal if you choose to do so. All right, Mr. Hood. Good morning, Your Honor. Good morning. I think you've struck upon my major argument in this case is that summary judgment in favor of all the defendants should be affirmed. For one simple, compelling reason. Plaintiff has produced no actual facts in support of these claims. He's filed no affidavits. He's filed no deposition testimony. He's filed no debts taken. Debts were taken. I took those debts. And I supplied the documents. I supplied the evidence that is in the brief that the court ruled on. And that was the facts that was before the court. Evidence I supplied. Plaintiff supplied no evidence in this entire argument. In three motions for summary judgment, there's not a shred of evidence. All there is are allegations taken from the complaint. And the letter he refers to, there's no foundation for it. It's not sworn to. Nobody testifies to about it. And it's an attachment to the complaint. Was there a motion to strike? There was not a motion to strike. So, because it never came up. But you were, it was a document you had submitted, correct? It was attached to the complaint. I submitted the entire complaint, including the two attachments. And the two attachments included that letter. So, it is an allegation in the complaint. So, in order to supply the motion for summary judgment, the non-moving party must present a factual basis that would arguably entitle him to judgment. It's, as they say, quote, the put-up-or-shut-up moment in a lawsuit. And to put up, the opponent party must produce actual evidentiary facts that would enable a jury to return a favorable verdict. Mere speculation, conjecture, or guess is insufficient. And here, there were no facts. None.  The facts you even asked him about. He presented no affidavits. He presented no deposition testimony. He presented nothing to establish those facts. Because there are only allegations in the complaint. It's the only thing that was ever discovered were these allegations. Were the depositions in the court file? Pardon me? Were the deposition transcripts in the court file? The deposition transcripts, pages of the deposition transcript, I put in the court file. So, I attached them to my motion for summary judgment. And he didn't catch any pages of deposition transcripts. I have, he claims in his reply brief, these 10 pages are facts. And these 10 pages have no facts, no factual basis for his complaint. They talk about the investigation being done because Wayne Schnell, who's not a defendant in this case, he was never served and thus dismissed, and he had nothing to do with their firing. They talk about Wayne Schnell having to make repeated claims before the board, asking them to be investigated because he was being harassed. And that's why the investigation began. So, I think the court gets that before even proceedings to hear about a weakness of the plaintiff's argument against the trial, the court's reasoning, the court has good reason to affirm summary judgment. Because in this case, he produced no facts. No facts whatsoever. If I get into the basis of the motions for summary judgment, Schironi was fired by the vote of the trustees. And the vote of the trustees was required to fire Schironi. It's a village ordinance. It requires the hiring and firing be devised in consent to the board. And therefore, it's different than the federal cases he talks about. Because here, it was an ordinance. It was an ordinance that the village had to pass. Now, that's a question that changes what you just said. Did they pass this ordinance in order to fire Schironi, or was it already on the books? This was already on the books. It had been on the books for a long time. So, all they did was execute under that ordinance. They did not legislate that ordinance at that time. And I would like to point out, there's a case, a second district case, I might add, where an ordinance was passed. It's called Schiller v. Board of Fire and Police Commissioners. And we cited in our brief. And this police officer said he was seeking a promotion. And he was fourth on the promotions list. And then they promoted somebody. And then he was third on the promotions list. And then they promoted somebody else. And then he was second on the promotions list. And then the village voted that they no longer had to go by who was first, second, or third. They can take any of the first three candidates. And so, he was passed up because of that ordinance. And this court said that those were immune by Section 2-103, the act that provides a local public entity is not liable for any injury by causing or adopting or failing to adopt an enactment or failing to enforce any law. And by Section 2-205, that a public employee is not liable for any injury caused by his adoption or failure to adopt an enactment or by his failure to enforce any law. This was the second district. This court said. It really doesn't respond to the point that in order to determine if the action is entitled to legislative immunity, you look at the nature of the act. You don't look at the motivation. Make that clear because they could pass a law for a dastardly reason or for a good reason. But the bottom line is the law doesn't require any explanation or allow any inquiry into it. It's just immune. But the cases, although, as you point out, they're federal, there's several that make the distinction between setting a policy that's going to be broadly applicable or doing something that affects only one person. Right. And as an employer, the village is, the argument is that they act in their administrative capacity when they vote to fire someone. That only applied to Sherrong. Had they eliminated the position of police chief, that would, I think, arguably be entitled to legislative immunity. But you're not really responding, in my opinion, to those cases that say you look at the type of action. Okay. First of all, those are federal cases. I don't. And help me understand why you wouldn't use that. Second of all. Ryan, help me understand why you wouldn't use that philosophy. Those federal cases. Well, first of all, this ordinance was passed long before Chief Sherrong was ever. Matter of fact, he'd been fired once before by the village under the same ordinance. The ordinance being that the village board hires and fires. Right. And the village board hires and fires everybody. The village board has to hire and fire part-time police officers. So, I mean, that came as quite a shock to Mr. Grossman. But the village board hires and fires everybody. It's a small village. So they want control over who's going to be their employees. So the federal courts have said that the Seventh Circuit held that the ordinance was a legislative act as it was adopted through the legislative process. Okay. So it wasn't just whether it turned to hiring and firing. It was whether it was adapted to the legislative process. And it was this act. Are you reading from Schiller? Pardon me? Is it Schiller you're reading from? I'm reading from McBride v. McClain, 397 F. Sub. 3rd, 1198. So then I'll read from. So you just don't agree.  The hiring of a particular employee is anything other than a legislative act if the village has an ordinance such as yours. Yes. Okay. And the appellate court agrees with me. It says, examine the accounting code to determine whether a board of commissioners had the authority to take the action to form the basis of the claim. Belden asks, were these acts were integral steps in the process? And they said, without a doubt. So it's whether they enacted for this particular person or were they in the books for a long time. And the legislator had to act in order to get him fired. They had to act in order to hire him. They had to act in order whether to get a part-time police officer hired. They had to act whether to get a part-time police officer acquired. That was what their ordinances were. It's the legislation they required. Have I answered Your Honor's question? Yes. Okay. So we have those two immunities. We also have the immunity that says a village municipality is not liable if their employees are not liable. So we have those three immunities that apply to this case. Do you mean the individual defendant's immunity for voting on the ordinance? There are two specific immunities that apply to voting on the ordinance. That's 2-205. It says a public employee is not liable. And that's 2-205. I guess that, just so you, I mean my thinking on that is that until you educate me otherwise, they're not the employer. Right. So they're not liable anyway. Well, under 2-103 it says a local public entity is not liable for any injury caused by enactment of an ordinance. But again, you dispute that there's any administrative, there's any inquiry into the nature of the act, and there's still, according to you, immunity even if the acts would be characterized as administrative. And I don't know who disputed it. The Second District disputes it in the Shutter case. I see I'm running out of time here. I could address the legislative immunity. I could address the fact that Mr. Dickerson was fired for 10 specific reasons, and the arbitration brought up that they claimed it was a sham, and the arbitrator disagreed with that. I would like to talk about the Beckman decision for a minute, because I find it very interesting that the plaintiff cites the Beckman decision, but he cites the appellate court Beckman decision, which was overruled. He says in his brief on page 13, the Illinois Supreme Court decision, Beckman v. Freeman, and then cites the Supreme Court rule. And then he goes on to say on page 14, we look instead at the court recent decision, Reinhart v. General Cable. That is from the appellate court decision, which was overturned. And he cites the whole paragraph from Reinhart, which was also overturned by the Illinois Supreme Court. So he cites a brief to an appellate court case that was overturned by the Supreme Court, citing another appellate court case that was overturned by the Supreme Court. I have a minute left, and I would like to talk about Mr. Rivera in a minute. But the holding in the Supreme Court Beckman?  Was what? The holding in the Supreme Court Beckman was that it says, in this case the court finds that race judicata does not apply to this case based on the decisions of Gonzales, and instead finds the plaintiff has failed to state a cause. Was Gonzales the arbitrator? Pardon me? Was Gonzales another case, or was it the arbitrator? It was another case. Another case entirely. Instead, the plaintiff has failed to state a cause of action. So my position is that in this case the court finds that race judicata, can I finish, Your Honor? Yes. Thank you. In this case the court finds that race judicata does not apply based on the decision of Gonzales. That is dicta. It has nothing to do with the holding in the case. The holding in the case is instead the plaintiff has failed to state a cause of action. So, and if I can further just take a second of your time, if you go to the next page of the Beckman Supreme Court decision, which was not overturned, They say, unlike cases where an at-will employee alleges retaliatory discharge, the union employee has a fact-finding hearing. The written findings of the arbitrator are given great weight by a court because at the hearing the arbitrator has become both judges of the law, in fact, binding on all parties. Of significance is the fact the plaintiff concedes that he was discharged for just cause under the collective bargaining agreement. Sheroni agreed that he was discharged for just cause under the report. You mean Dickerson? Sheroni wasn't subject to that. Sheroni agreed that he was discharged because of the report that was issued by Clark Baird and Smith. If the plaintiff had found or believed that the hearing was taken in any way, he could have pursued an action. So, he has this action under the Uniform Arbitration Act, and he didn't pursue it. Instead, he decided to pursue this action, which is foreclosed by the Uniform Arbitration Act. And with that, I thank the court. Thank you for your questions. Well, you cite Bartonville v. Lopez. Did you not? Concerning res judicata and Dickerson's claim. I'm sorry? You cited, I think, Bartonville v. Lopez. Okay. Related to Dickerson's claim.  And the res judicata argument. But that wasn't a... Was that what? That was not an Illinois whistleblower's act case. That was not a whistleblower act, no. And so, I wonder if there's an identity of the cause of action. I guess that ultimately would be my concern. That case involved an employee who was fired, I believe, because he was an equipment manager. And he said some bad things about the management, and they fired him. And he sought, he was given an arbitration hearing, and he lost that arbitration hearing. Then he sought mediation, and the court said, you're foreclosed from mediation. Where in counsel's brief does he cite the appellate court Beckman case? In pages 13 and 14. 13, he cites the Illinois Supreme Court decision. And then he says, in Beckman's supra, the bottom of the page, and supra means the case cited. But he doesn't cite the case cited. He cites the 151 Illinois Appellate 3rd 47, which says, we look and set this court's recent decision in Reinhart. And Reinhart himself was overruled. Do you see where I'm going with that, Your Honor? Would it be fair to say that, so at the top of page 14, that quote there, that black quote, you're saying, although it appears to be from the citation, to be from the Illinois Supreme Court case, it's not really. It's really from the Ill App case. Yes, and it cites a case, an appellate court case that was overturned by the Supreme Court. It cites the Reinhart case, which is then overturned by the Illinois Supreme Court. All right. I believe there are no other questions, so thank you very much for your argument. And we will allow Mr. Grossman to provide rebuttal if he chooses to do so. So I believe, Your Honors, that I do refer to the fact that the case was overruled, but for different reasons. I say that in my brief. And I've been trying to find that where I said that, but it's in parentheses. I think it was either in the summary, but I've been concentrating on something else. Well, there were a couple of cases that you cited that were overturned. The case decided by Justice Cunningham followed the, I'm trying to, I guess that was, yeah, that's the Beckman case.    Because if it's overturned on facts sufficient, it gets overturned on facts sufficient, not on the issue of, the issue that you're trying to deal with here. But I wanted to address the claim that there's no evidence. So I say on page 8 of my reply brief, however, defendants that served plaintiff did not provide evidence. And I go on to say, plaintiff surely pointed to various pieces of evidence, including plaintiff's deposition, which was taken by Mr. Hurd, where in the fact that plaintiffs having gone to McHenry County State's attorney and FBI to report defendants' illegal conduct, as I discussed, I point out that Was that testified to in a plaintiff's death? Is that what you're saying? Yes. Yeah. And was that, I'm gathering the entire death transcripts were not submitted to the court. I'm gathering that. I, that may be true, but I cite this What I'm asking is, were those portions of the deposition before the court? I believe they were, and I cite the page, page 77. Is that appended to your brief? Page 77, it's right here. It doesn't say anything about it. Well, CR, it's the court record, page 589. I certainly wasn't trying to fool anybody. I mean, I believe that I, you know, I don't have the record sitting right here. It's a 500, 600-page record or something. I cite Cerrone's deposition, page 77, CR 589. I mean, I suppose what I'm saying is that's where the discussion takes place, and that's, I'm using He's correct. He appended all of those deposition pages, and I pointed out to the court where you could find this information. Then I say, I also cite And was it before the court? I guess that's, I mean, in the end It was in his brief. So those pages, according to you, were all appended to defendant's summary judgment? I think I'm correct. You know, I'm pretty sure that they were. They were. He, well, actually, his brief and my reply, they're all in the record. And they could be, you know, obviously I can't do that here. But I also point out that a recording of the executives, I provided a disk, which we agreed on. We had an agreement that it could be submitted to the court. And the disk had a recording of an executive session where the board discusses the fact that plaintiffs are conducting an investigation and their obvious irritation of being the subjects of the investigation and how it could be stopped and in which the village attorney informs the plaintiffs, informs the board that plaintiffs could be fired. I also point to the fact that the board authorized an investigation of plaintiffs soon after the board found out that the plaintiffs were reporting allegedly illegal conduct by village officials. Citing to the official investigation report itself, I attached the investigation reports, Exhibit E, to defendants. I point out that they've attached Exhibit E in their motion for summary judgment. And the fact that three days after the issuance of the report, the plaintiff was fired. I believe that you could look at that and say, well, obviously what's going on here is, I mean, the board is discussing the fact that, hey, they're investigating this and we don't like being investigated and how are we going to stop this and, you know, these people need to be dealt with. That's what's going on here. And I think if a jury were to hear that, they would say, and also there's plentiful law that says that just the fact that you have other reasons, legitimate reasons. I point out numerous cases. It's a flood of cases that say the idea of whether it's pretextual is not really right for summary judgment in the vast majority of cases. It's a question of fact and motivation. And because it's that, you don't enter summary judgment on those things. But just to clarify, and I don't know that I'm going to, but I mean, I hear his argument is this technical argument. Not that these things aren't alleged or argued or contended by you. I don't hear him saying that. I hear him making a technical argument that was not properly before the court for a motion for summary judgment, which, you know, those sorts of things are not what my client would say and, you know, we're going to contend this. It's here's a debt transcript, and in there the plaintiff says, you know, whatever those factual contentions are. Or there's affidavits, an affidavit from an expert or investigator, this is what I would testify to. But I hear him making, do you see the distinction? Not that maybe your allegations weren't enough. I hear him saying, let's just let me finish, that they weren't properly before the court for a summary judgment, in the universe of appropriate facts for summary judgment. Okay. I think that 1005 of the supreme, although I guess it's a civil procedure code, says. It's a summary judgment statute. Yes, it says, considering all the evidence, right, the depositions and the other discovery, whatever. What I did was, I said, here's the, in my submission, I attached a disk that said, here's what they were saying in the official, we agreed. Because otherwise, if we hadn't agreed, I couldn't use it because there was some kind of. And you say that was admitted by stipulation. That was. It was before the court by stipulation. Exactly. And I submitted that, and I said, look at what's going on here, judge. They're talking about the fact that my people were doing an investigation. That they went to the feds, and they went to the state's attorney, and they reported these guys, and they don't like it. And that, three months later, everybody's fired. That's what I'm saying. Now, when he responded, that is, when my post and counsel responded, actually, they made the motion of summary judgment. What I said, all I did was, I attached that disk, and I also pointed out, look at what they've attached, right? You know, there's the deposition transcripts, and I believe, whether it's page 77 is the first page where it's discussed, or whatever, you can look at the deposition and say, this is what's going on. They were discussing all these facts that we've been talking about for two years when we were litigating this, that the judge was well aware of. And I believe that the disk, at the very least, is definitive proof of everything we were saying in the complaint. So, and if I could just address, just for a minute, the res judicata. Like I said, the, I do advert to the fact that it was on different grounds. And they do say, in Beckman, yes, the facts about his retaliatory discharge theory were there. But they were never ruled on. There's nothing in the arbitrator's opinion that says anything about it. They just, he just goes on to say, look at these horrible things that this person did, and he's fired for reasons that counsel was at pains to point out have nothing to do with the retaliatory discharge claim here. And there is a distinction, a meaningful one, between retaliatory discharge, which requires a firing, and Illinois Whistleblowing Act, which just requires that you be retaliated against. And that's why Mr. Rivera, if you look at his resignation letter, he says, I can't deal with, you know, everything that you've been doing here, and there's a pending federal investigation in which you interfere with, and I resign. So I would ask that the court reverse the summary judgments and give my clients a chance to try. Thank you. All right, thank you, counsel, for your arguments this morning. We will take the matter under advisement.